**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CARLOS BRIGGS,

      Plaintiff,

v.                                        Case No. 13-12583

UNIVERSITY OF DETROIT - MERCY, et al.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Carlos Briggs sues his former employer, University of Detroit Mercy

(UDM), his former boss at UDM, Kerry Gaither, UDM's media consultant, Meisner

Associates, Inc., and its President, Mort Meisner, under Title VII of the Civil Rights Act

of 1964, and state law.  Defendants Meisner Associates and Meisner (hereinafter

"Meisner") move for summary judgment as to Plaintiff's state law defamation claim.[1]

The matter is fully briefed, and no hearing is needed.  *See* E.D. Mich. LR 7.1(f)(2).  With

respect to the first three allegedly defamatory statements, because Plaintiff has not had

---

[1] Meisner labeled his motion as a motion for summary judgment yet cited both
Rule 12(b)(6) and Rule 56 in his "wherefore" clauses.  (Dkt. # 8.)  Given that Meisner
relies on the Rule 56 standard throughout its brief, and that both parties attach exhibits
to their briefs, this motion will be treated as a motion for summary judgment and
disposed of under Rule 56.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule
12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by
the court, the motion must be treated as one for summary judgment under Rule 56.").
Also, Plaintiff should note the newest local rule governing type size.  E.D. Mich. LR
5.1(a)(3).

sufficient time for discovery, Meisner's summary judgment motion will be denied.  With respect to the fourth statement, an opinion, summary judgment will be granted.

## I. BACKGROUND

Before graduating from Baylor University, where Plaintiff attended college on a basketball scholarship, he was drafted to the San Antonio Spurs of the National Basketball Association (NBA).  (Dkt. 1 at Pg ID 11.)  While he never played for the NBA, Plaintiff enjoyed brief stints in the Continental Basketball Association and the Philippine Basketball Association.  (*Id.*)  After completing his playing career, and graduating from Baylor, Plaintiff began his coaching career as head coach of the men's basketball team at Schoolcraft college.  (*Id.* Pg ID 12.)  In 2007, Plaintiff began his tenure at UDM as an assistant coach for the men's basketball team.  (*Id.* Pg ID 11.)  Plaintiff disclosed his knowledge of an extra-marital affair between his co-assistant coach and UDM's athletic director (Defendant Gaither), which, he alleges, resulted in a hostile working environment.  (*Id.* at Pg ID 13-15.)  As a byproduct of the affair, members of the men's basketball team suffered as well, he says.  (*Ia.* at Pg ID 13-14.)

As part of UDM's supposed retaliation against Plaintiff, the University enlisted Meisner as a consultant and media liaison for its men's basketball program.  (*Ia.* at Pg ID 11.)  Plaintiff alleges that Meisner slandered him to a Detroit Free Press reporter and a UDM alumnus.  (*Id.* at Pg ID 16.)  Specifically, Plaintiff alleges that Meisner told the reporter that: 1) Plaintiff was kicked out of Baylor University, 2) Plaintiff was fired from his previous coaching positions, and 3) Plainitff was the cause of UDM's basketball players' dissension.  (*Id.*)  Meisner allegedly repeated those statements to a UDM alumnus, and added a fourth: that Plaintiff is a "piece of sh*t."  (*Id.*)

2

## II.  STANDARD

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

Summary judgment is typically improper if "the non-movant is not afforded a sufficient opportunity for discovery."  *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 627 (6th Cir. 2002) (quoting *Vance v. United States,* 90 F.3d 1145, 1148 (6th Cir.1996)); *see also Celotex,* 477 U.S. at 322-23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery*. . . .") (emphasis added).  However, the non-movant bears the burden of informing the court that additional discovery is required.  *Id.*  Although normally, the non-movant must file a Rule 56(d) affidavit or a motion for additional discovery detailing the additional discovery it needs, the Sixth Circuit has suggested that failure to do so is not fatal where the non-movant has adequately explained its need for more discovery in an alternative form.  *Short v. Oaks Corr. Facility*, 129 Fed. Appx. 278, 282 n. 2 (citing *Abercrombie* and noting, "This court [the Sixth Circuit] has suggested that failure to file a motion or Rule 56(f) affidavit will be excused where the opposing party nonetheless explains its need for discovery to the district court.").

## III.  DISCUSSION

Plaintiff argues that summary judgment is "[i]nappropriate [b]ecause [d]iscovery [i]s [o]ngoing."  (Dkt. # 20 at Pg ID 202.)  While Plaintiff did not file an affidavit or motion

3

requesting additional discovery, his response motion to Meisner's motion for summary judgment set forth his "need for discovery, what material facts [he] hopes to uncover, and why [he] has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (internal citations omitted).  Plaintiff's request is also bolstered because of the nature of his claim: defamation claims contain "factual issues [that] are often contentious." *Alvey v. United Air Lines, Inc.*, 494 F.2d 1031, 1032 (D.C. Cir. 1974).[2]

### A. Plaintiff's Request for Additional Discovery is Timely

This is not a case where the non-movant requesting additional discovery was "dilatory in its discovery efforts." *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011).  As of August 7, 2013, Plaintiff's counsel had already requested available dates to depose Mort Meisner but Meisner's counsel had yet to respond.  (Dkt. # 20 at Pg ID 203.)  This court issued a scheduling order on July 15, 2013, which set January 31, 2014, as the deadline for completion of discovery.  (Dkt. # 12 at Pg ID 131.)  The fact that Plainitff requested dates for a deposition–within approximately three weeks of the scheduling order's issuance and almost six months before the completion of discovery deadline–demonstrates Plaintiff's diligence in seeking discovery.  To the court's knowledge, no discovery has been exchanged.  In its current posture, a grant of

---

[2] Meisner Associates, Inc. also argues that it cannot be held liable for the alleged intentional tort of its President, Mort Meisner.  (Dkt. #8 at Pg ID 80.)  Additional discovery will reveal whether or not Meisner's statements were made within the "scope of his employment." *Leitch v. Switchenko*, 426 N.W.2d 804, 805 (1988).  Accordingly, summary judgment will be denied with respect to this claim.

summary judgment could warrant reversal.  *See White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231 (6th Cir. 1994) ("[S]ummary judgment should not have been awarded until the plaintiffs were allowed some opportunity for discovery . . . .[I]n the instant case, we find that the grant of summary judgment, absent *any* opportunity for discovery, is such a misuse."); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion.").

### B.  Plaintiff's Request for Additional Discovery is Specific

Plaintiff's discovery request is sufficiently specific to preclude a grant of summary judgment.  *See CenTra*, 538 F.3d at 420 ("[A]s a general matter we have upheld the denial of Rule 56(f) motions when the court deems as too vague the affidavits submitted in support of the motion.").  In his response motion, Plaintiff details material facts—"those facts defined by the substantive law and that are necessary to apply it," *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)),—that he hopes to uncover during discovery.

In Michigan, a claimant must prove the following elements to establish a *prima facie* case of defamation:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication [defamation *per quod*].

5

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (2010) (citing *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005)).  Focusing on the pertinent material facts Plaintiff seeks to unearth during discovery, each element will be addressed in turn.

### 1.  A False and Defamatory Statement

### a.  The First Three Statements

Meisner does not deny making the alleged statements; he maintains that they are true, and therefore non-actionable.  (Dkt. # 8 at Pg ID 82.)  However, as Plaintiff points out, Meisner defends the truth of statements that are substantially different than those alleged in Plaintiff's complaint.  Plaintiff alleged that Meisner said Plaintiff was *kicked out of Baylor University*, (Dkt. # 1 at Pg ID 16), but Meisner's motion for summary judgment defends the truth of the statement that Plaintiff was *kicked off of Baylor's Basketball Team*, (Dkt. # 8 at Pg ID 84).  Similarly, Plaintiff alleged that Meisner said Plaintiff had been *fired from his previous coaching positions,* (Dkt. # 1 at Pg ID 16), yet Meisner defended the truth of the statement that Plaintiff *left Schoolcraft under strained circumstances,* (Dkt. # 8 at Pg ID 85).  As Plaintiff argues, because the first two statements themselves are in dispute, a grant of summary judgment would be premature.[3]

Because Meisner does not address the third statement that Plaintiff alleged, that Plainitff was the cause of UDM's basketball players' dissension (Dkt. # 1 at Pg ID 16), summary judgment as to that statement will be denied.

---

[3] The doctrine of substantial truth (a communication "is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced," *In re Chmura*, 626 N.W.2d 876, 887 (2001)) may ultimately apply, but first more discovery is required.

6

### b.  The Fourth Statement

The fourth alleged statement, that Plaintiff is a "piece of sh*t," is not defamatory. "[F]oul, abusive, or vituperative language does not constitute a defamation."  50 Am. Jur. 2d *Libel and Slander* § 157 (2012).  The law of defamation observes the fact-value distinction, which holds that only a statement of fact can be proven false.  *See Ireland v. Edwards*, 584 N.W.2d 632, 637 (Mich. Ct. App. 1998).  For this reason, Plaintiff cannot establish that the opinion that plaintiff is a "piece of sh*t" is false.  Put differently, to be defamatory, a statement must be disprovable—an impossible feat in this instance. *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 236 (1999) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17-20 (1990)).  Because the alleged statement is one of opinion, and therefore cannot be disproven, it is non-actionable.  Accordingly, summary judgment will be granted with regard to the fourth statement.

### 2.  An Unprivileged Communication

A statement made under a qualified privilege is not defamatory.  "The elements of qualified privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only."  *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 636 (1992).  However, "where the circumstances surrounding the publication are factually disputed, the Court may not be able to decide this question on summary judgment." *Parnell v. Booth Newspapers, Inc.*, 572 F. Supp. 909, 914 (W.D. Mich. 1983) (citing *Lawrence v. Fox*, 97 N.W.2d 719, 722-3 (1959)).  Here, whether Meisner made the alleged statements in good faith remains in dispute but Plaintiff seeks to uncover this

7

fact during discovery.[4]  Accordingly, a grant of summary judgment now would be improper.

### 3. Fault Amounting to at Least Negligence

Generally, a statement must be made with negligence to be defamatory.  When a public figure claims defamation, he must also "prove by clear and convincing evidence that the publication . . . was made with actual malice through knowledge of its falsity or through reckless disregard for the truth."  *Kefgen v. Davidson*, 241 Mich. App. 611, 624 (2000).  The parties disagree as to Plaintiff's status and discuss this issue extensively in their briefs.  Although characterization of the party claiming defamation is a question for the court, there is no need to resolve this matter now because if Plaintiff is a public figure, the question of whether Meisner had the requisite actual malice would be implicated.  *See Hutchinson v. Proxmire*, 443 U.S. 111, 120 (1979) ("The proof of 'actual malice' calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition."); *see also Steadman v. Lapensohn*, N.W.2d 580, 583 (1980) ([G]iven the very subjective nature of the test for actual malice . . . we do not know whether a fact finder would infer actual malice . . . .").  In light of Plaintiff's motion detailing his need to depose Meisner to determine his mental state, summary judgment would be premature.

_____

[4] Michigan law recognizes a qualified privilege to publish information which is in the public interest.  If applicable, Plaintiff would need to prove that Meisner acted with actual malice, a state of mind discussed in the next section.  *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 914 (6th Cir. 1982).

**4. Special Harm**

Michigan law recognizes two types of defamation: defamation *per se* where a defamatory statement is actionable "irrespective of special harm" and defamation *per quod*, where "the existence of special harm [is] caused by publication." *Yono v. Carlson*, 770 N.W.2d 400, 402 (2009) (internal quotation marks omitted). Without identifying which type of defamation he alleges, Plaintiff has pleaded with sufficient specificity to meet the higher burden required for defamation *per quod. See Heike v. Guevara*, 654 F. Supp. 2d 658, 674-75 (E.D. Mich. 2009) *aff'd*, 10-1728, 2013 WL 1092737 (6th Cir. Mar. 18, 2013) (citing Fed. R. Civ. P. 9(g) and stating, "when a plaintiff alleges defamation *per quod*, the plaintiff must specifically allege the special damages that are an element of the claim.") Further discovery is necessary to determine whether or not the alleged defamatory statements caused Plaintiff to suffer a direct financial loss.

**IV. CONCLUSION**

Although the court is denying Meisner's summary judgment motion on Plaintiff's defamation claim regarding the first three alleged statements, Plaintiff will nonetheless have to overcome Meisner's defenses of privilege and truth. Plaintiff should not interpret denial of Meisner's summary judgment motion as "an open license to go on a fishing expedition" but "[o]nly that discovery necessary to establish whether or not a valid defamation claim exists should be pursued." *Arnold v. Air Midwest, Inc.*, 877 F. Supp. 1452, 1465 (D. Kan. 1995) *aff'd*, 100 F.3d 857 (10th Cir. 1996). Accordingly,

9

IT IS ORDERED that Meisner's motion for summary judgment [Dkt. # 8] is

GRANTED IN PART and DENIED IN PART.  The motion is GRANTED with respect to

the statement that Plaintiff is a "piece of sh*t."  The motion is DENIED with respect to

every other claim.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 28, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 28, 2013, by electronic and/or ordinary mail.

 s/Holly Monda for Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522