**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CARLOS BRIGGS,

      Plaintiff,

v.                                      Case No. 13-12583

UNIVERSITY OF DETROIT-MERCY, et al.,

      Defendants.

_____/

**OPINION AND ORDER**
**GRANTING THE MEISNER DEFENDANTS' RENEWED MOTION FOR SUMMARY**
**JUDGMENT WITH RESPECT TO PLAINTIFF'S DEFAMATION CLAIM AND**
**DISMISSING PLAINTIFF'S CLAIM FOR VIOLATION OF MICHIGAN'S**
**WHISTLEBLOWER PROTECTION ACT AS TO THE MEISNER DEFENDANTS**

      Plaintiff Carlos Briggs sued his former employer, University of Detroit Mercy

(UDM), his former boss at UDM, Kerry Gaither, UDM's media consultant, Meisner

Associates, Inc., and its President, Mort Meisner, under Title VII of the Civil Rights Act

of 1964 and state law, in Wayne County Circuit Court. After all Defendants removed the

case to this court, on July 3, 2013, Defendants Meisner Associates, Inc. and Mort

Meisner (hereinafter "the Meisner Defendants") moved for summary judgment as to

Plaintiff's state law defamation claim. On August 28, 2013, the court granted in part and

denied in part the Meisner Defendants' motion for summary judgement. The Meisner

Defendants have renewed their motion for summary judgment.[1] The matter is fully

_____

      [1]Just as they did in their first motion for summary judgment, the Meisner
Defendants label their pending motion as a renewed motion for summary judgment yet
cite both Rule 12(b)(6) and Rule 56 in the "wherefore" clauses. (Dkt. ## 8, 37.) Given
that the Meisner Defendants rely on the Rule 56 standard throughout their brief, and
that both parties attach exhibits to their briefs, this motion will be treated as a motion for

briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). For the following

reasons, the court will grant the Meisner Defendants' renewed motion for summary

judgment with respect to Plaintiff's defamation claim and dismiss Plaintiff's claim for

violation of Michigan's Whistleblower Protection Act (WPA) as to the Meisner

Defendants.

## I. BACKGROUND

Before graduating from Baylor University, where Plaintiff attended college on a

basketball scholarship, he was drafted to the San Antonio Spurs of the National

Basketball Association (NBA). (Dkt. # 1-2, Pg ID 11.) Although he never played for the

NBA, Plaintiff enjoyed brief stints in the Continental Basketball Association and the

Philippine Basketball Association. (*Id.*) After completing his playing career, and

graduating from Baylor, Plaintiff began his coaching career as head coach of the men's

basketball team at Schoolcraft college. (*Id.* at Pg ID 12.) In 2007, Plaintiff began his

tenure at UDM as an assistant coach for the men's basketball team. (*Id.* at Pg ID 11.)

Plaintiff disclosed his knowledge of an extra-marital affair between his co-assistant

coach and UDM's athletic director (Defendant Gaither), which, he alleges, resulted in a

hostile working environment. (*Id.* at Pg ID 13–15.) As a byproduct of the affair,

members of the men's basketball team suffered as well, he says. (*Ia.* at Pg ID 13-14.)

As part of UDM's supposed retaliation against Plaintiff, the University enlisted

Mort Meisner as a consultant and media liaison for its men's basketball program. (*Ia.* at

_____

summary judgment and disposed of under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a
motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and
not excluded by the court, the motion must be treated as one for summary judgment
under Rule 56.").

Pg ID 16.)  Plaintiff alleges that Meisner slandered him to Detroit Free Press reporter Perry Farell and UDM alumnus Michael Korsak.  (*Id.*)  Specifically, Plaintiff alleges that Meisner told Farell that:  1) Plaintiff was kicked out of Baylor University, 2) Plaintiff was fired from his previous coaching positions, and 3) Plainitff was the cause of UDM's basketball players' dissension.[2]  (*Id.*)  Meisner allegedly repeated those statements to Korsak, and added a fourth:  that Plaintiff is a "piece of sh*t."  (*Id.*)

On August 28, 2013, the court granted in part and denied in part the Meisner Defendants' motion for summary judgment.  The court denied the motion with respect to the first three allegedly defamatory statements because, at that time, Plaintiff had not had sufficient time for discovery.  The court granted the motion with respect to the fourth statement, an opinion.  On February 18, 2014, the Meisner Defendants renewed their motion for summary judgment with respect to the first three statements.

## II.  STANDARD

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In deciding a motion for summary judgment, the court must view the evidence in

---

[2]With respect to the first two allegedly defamatory statements, just as they did in their first motion for summary judgment, in their renewed motion, the Meisner Defendants again defend the truth of statements that are substantially different than those alleged in Plaintiff's complaint.  Plaintiff alleged that Meisner said Plaintiff was *kicked out of Baylor University*, but the Meisner Defendants' renewed motion defends the truth of the statement that Plaintiff was *kicked off of Baylor's Basketball Team*.  Similarly, Plaintiff alleged that Meisner said Plaintiff had *been fired from his previous coaching positions*, yet the Meisner Defendants' renewed motion defends the truth of the statement that Plaintiff *left Schoolcraft under strained circumstances*.  In their reply, the Meisner Defendants state that "[f]or purposes of this Motion only, Defendants will stipulate to Plaintiff's version of the statements."  (Dkt. # 56, Pg ID 1656.)

the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment, therefore, is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III.  DISCUSSION

### A.  Defamation

In Michigan, a claimant must prove the following elements to establish a *prima facie* case of defamation:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication [defamation *per quod*].

4

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (2010) (citing *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005)).  Although generally a statement must be made with negligence to be defamatory, when a public figure claims defamation, he must "prove by clear and convincing evidence that the publication . . . was made with actual malice through knowledge of its falsity or through reckless disregard for the truth."  *Kefgen v. Davidson*, 241 Mich. App. 611, 624 (2000).  Whether a defamation plaintiff is a public figure is a question of law for the court.  *Falls v. Sporting News Pub. Co.*, 899 F.2d 1221, at *1, *3 (6th Cir. Apr. 10, 1990) (unpublished table opinion) (citations omitted); *see also Bufalino v. Detroit Magazine, Inc.*, 449 N.W.2d 410, 413 (Mich. 1989) ("While the question whether a person is a public figure for purposes of a defamation action is initially a question for the trial court, the determination is in effect one of law, and can be made by a reviewing court in the first instance on the record as submitted.")

Public figures include those who achieve fame "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974).  A defamation claimant may be a limited-purpose public figure or a general-purpose public figure.  "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  *Id.* at 351.  The Sixth Circuit has interpreted *Gertz* as establishing a two-prong test to determine if an individual is a limited-purpose public figure.  *Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir. 1982) (citing *Gertz*, 418 U.S. at

5

345, 352).  First, a "public controversy" must exist.  *Id.*  Second, the nature and extent of

the individual's involvement in the controversy must be ascertained.  *Id.*

The Meisner Defendants argue that Plaintiff is a limited-purpose public figure and

cite various cases in which courts classified athletes and coaches under that status.

With respect to the first two allegedly defamatory statements—that Plaintiff was kicked

out of Baylor University and that Plaintiff was fired from his previous coaching

positions—Plaintiff counters that there was no "public controversy" surrounding these

events.  However, even after *Gertz*, courts have held that "[s]ometimes position alone

can make one a public figure."  *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287,

1300 (D.C. Cir. 1980) (citations omitted).  This court has previously explained that

"[s]ports figures are generally considered public figures because of their position as

athletes or coaches."  *Falls v. Sporting News Pub. Co.*, 714 F. Supp. 843, 846–47 (E.D.

Mich. 1989) (citing *Marcone v. Penthouse Intern. Magazine for Men,* 754 F.2d 1072,

1081 n.4 (3d Cir. 1985); *see also Fodor v. Berglas*, 95 CIV. 1153 (SAS), 1995 WL

505522, at *1, *5 (S.D.N.Y. Aug. 24, 1995) ("Courts have often classified some people,

such as sports figures, as limited purpose public figures based solely on their status,

position, or associations.").  In *Falls*, without identifying a public controversy, this court

determined that the plaintiff, a sports columnist who the defendant-publisher had

terminated, was "a public figure with regard to his sports writing activities."  *Id.*  In

upholding the judgment of the district court, the Sixth Circuit explained:

> The plaintiff argues that he is not a public figure because he did not thrust
> himself into a controversy over his firing.  This is not the test.  The real
> question is whether Mr. Falls' career as a sportswriter made him a public
> figure for purposes of commentary on him as a sportswriter.  Mr. Falls did
> choose to thrust his writing into the public eye, and he did 'enjoy significantly

6

> greater access to the channels of effective communication and hence had a more realistic opportunity to counteract false statements than private individuals normally enjoy.' *Gertz,* 418 U.S. at 344.

*Falls*, 899 F.2d, at *3. Similarly, here, the court finds that Plaintiff is a public figure for purposes of commentary on his career as a collegiate level basketball player and coach. As a basketball player at Baylor, on a full scholarship, his name appeared in newspapers (dkt. # 37-10, Pg. ID 537), and games were sometimes televised (*ia.* at Pg. ID 538).[3] Before graduating from Baylor University, he was drafted to the San Antonio Spurs of the NBA. (Dkt. # 47, Pg ID 1029.) As a coach at Schoolcraft college, his name also appeared in newspapers. (Dkt. # 37-10, Pg. ID 534.) Plaintiff's voluntary decision to play, and coach, collegiate basketball is a sufficient "thrust" within the meaning of *Gertz* to create limited-purpose public figure status. As a successful basketball player and coach, Plaintiff enjoys greater access to the channels of effective communication and thereby a more realistic opportunity to clear his name than private individuals. *Gertz,* 418 U.S. at 344.

With respect to the third statement, that Plainitff was the cause of UDM's basketball players' dissension, the Meisner Defendants argue that it is a statement of opinion and thus non-actionable. In his response Plaintiff initially states that he "disputes the suggestion that Meisner's statement about Plaintiff being the source of

------

[3] The law does not support Plaintiff's argument that he graduated from Baylor over 20 years before Meisner uttered the first allegedly defamatory statement. The Sixth Circuit has explained, "once a person becomes a public figure in connection with a particular controversy, that person remains a public figure thereafter for purposes of later commentary or treatment of that controversy." *St. v. Nat'l Broad. Co.*, 645 F.2d 1227, 1236 (6th Cir. 1981).

team dissension was an 'opinion'" (dkt. # 47, Pg. ID 1024), yet he never provides any argument to support this contention or otherwise discusses the third statement. This is reason enough to grant summary judgment with respect to the alleged third statement. *See Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). However, in its own review of the record, the court found that in his affidavit, Korsak stated, "Mr. Meisner also stated that Mr. Briggs was the cause of the dissension which has been going on within the UDM Men's Basketball program." (Dkt. # 47-4, Pg. ID 1103.) Assuming, *arguendo*, that Korsak's statement could lead a reasonable jury to conclude that Meisner uttered the third statement, the analysis provided in the context of the first two statements applies here too. In fact, the context of the third statement bolsters the court's finding that Plaintiff is a limited-purpose public figure. By Plaintiff's own terms, "[t]he UDM position was an advance in Briggs' career since it presented an opportunity to coach at a high profile, NCAA Division I level school." (Dkt. # 47, Pg. ID 1030.) As a coach at UDM, he could be seen on the sidelines when games were televised (dkt. # 37-10, Pg. ID 555), he recruited on behalf of UDM (*id.* at Pg. ID 586), and his biography appeared in the UDM media guide (dkt. # 37-11, Pg. ID 597), and fan program (dkt. # 37-12, Pg. ID 599).[4]

Given that Plaintiff is a limited-purpose public figure, the First Amendment requires him to prove that the Meisner Defendants' statements are false and that they acted with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80,

---

[4]Moreover, the court observed that the UDM basketball program's dissension could likely be classified as a "public controversy" and Plaintiff inserted himself into that controversy when he issued a press release about the circumstances of his termination from UDM. (Dkt. # 37-19, Pg. ID 588).

(1964). A defendant acts with "actual malice" where the defendant knew the allegedly defamatory statement was false, or acted "with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. "It also is worth emphasizing that the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666–67 (1989). The Supreme Court has stated that reckless disregard in this context means that the defendant must have published the material with a high degree of awareness of probable falsity or entertained serious doubts about the truth of the publication. *Id.* Whether a limited-purpose defamation plaintiff acted with actual malice is a question of law for the court. *See Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 539 (Mich. 2010).

Here, Plaintiff is unable to meet his evidentiary burden to show by clear and convincing evidence that the Meisner Defendants' either knew the statements were false or exhibited reckless disregard for the truth of the statements. Plainitff does not address malice with regard to the first statement. As for the second statement, Plaintiff argues that "even if it was true that Meisner said Briggs left Schoolcraft under 'strained circumstances' (which it is not) . . . he was simply repeating what Gaither told him . . .he did not attempt to clarify with Gaither what her basis for believing the information was true, he didn't care if it was true." (Dkt. # 47, Pg ID 1050.) Yet preconceived objectives or insufficient investigation do not constitute reckless disregard. *Ireland v. Edwards*, 584 N.W.2d 632, 640 (Mich. Ct. App. 1998) (quoting *Grebner v. Runyon*, 347 N.W.2d 741 (Mich. Ct. App. 1984)). Not caring about the truth of the alleged statement cannot be equated with a high degree of awareness that a statement is false. *See Smith*, 793

N.W.2d at 542 ("[I] t is well settled that the failure to investigate the accuracy of a communication before publishing it, even when a reasonably prudent person may have done so, is not sufficient to establish that the defendant acted with reckless disregard for the truth.")  There is no evidence on which a reasonable jury could find that the Meisner Defendants acted with actual malice.

The parties make several other arguments related to Plaintiff's defamation claim that need not be addressed in light of the court's findings that Plaintiff is a limited-purpose public figure and has not presented sufficient evidence to show that the Meisner Defendants acted with actual malice.  For example, the Meisner Defendants argue that the defenses of truth and privilege apply.  These arguments need not be addressed because they would not alter the outcome.  The Meisner Defendants also argue that Defendant Meisner Associates, Inc. cannot be held liable for the alleged intentional tort of its employee (and President), Mort Meisner.  This too will not be addressed as the court finds in favor of the Meisner Defendants.

The Meisner Defendants' renewed motion for summary judgment will be granted as to Plaintiff's defamation claim.

### B. Plaintiff's Other Claims

Plaintiff's complaint alleges six counts:  (1) violation of Michigan's Whistleblower Protection Act (WPA); (2) retaliation in violation of Michigan public policy; (3) breach of contract as to Defendant UDM; (4) defamation; (5) bystander sex harassment and discrimination in violation of Title VII; and (6) retaliation in violation of Title VII.  At the outset of their motion, the Meisner Defendants state, "[t]he only count applicable to these Defendants in Plaintiff's Complaint is Count IV - Defamation."  (Dkt. # 37, Pg. ID

379.)  In his response, Plaintiff disputes "that the only count 'applicable' to the Meisner

Defendants is Count IV.  Discovery has established that the Meisner Defendants were

involved in assisting UDM and Gaither in retaliating against Plaintiff in violation of the

Michigan Whistleblower Act and public policy by their action of defaming plaintiff."  (Dkt.

# 47, Pg. ID 1023.)

### 1.  Violation of the WPA

The WPA prohibits employers from "discharg[ing] . . . an employee . . . because

the employee . . . reports or is about to report . . . a violation or a suspected violation of

a law or regulation or rule promulgated pursuant to law of this state."  Mich. Comp. Laws

§ 15.362.  In his complaint, under the WPA count, Plaintiff states that "Briggs is an

'employee'" within the meaning of the WPA" and that "UDM and Gaither are 'employers'

within the meaning of the WPA."  (Dkt. # 1-2, Pg. ID # 17.)  As such, Plaintiff's

allegations did not put the Meisner Defendants on notice that he intended to assert the

WPA claim against them.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007); *see also Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 520 (6th Cir. 2006)

(alteration in original and citation omitted) ("The plaintiffs' Complaint simply does not

provide sufficient information to give the defendants fair notice of the claim or claims

against them, and the court is not required to create a claim for [the plaintiffs].").

Plainitff's WPA claim against the Meisner Defendants will be dismissed.

### 2.  Retaliation in Violation of Michigan Public Policy

In Plainitff's complaint, under the retaliation in violation of Michigan public policy

count, he alleges that "Defendants retaliated against Briggs . . . by . . . harassing and

permitting Defendants employees and agents to harass, discriminate against and

11

slander Briggs." (Dkt.# 1-2, Pg. ID 19.) A fair reading of this allegation should have put the Meisner Defendants on notice that Plaintiff intended to assert count two against them. At this stage in the litigation, Plaintiff's claim for retaliation in violation of Michigan public policy against the Meisner Defendants survives. The Meisner Defendants may move for summary judgment with respect to that claim.

## IV. CONCLUSION

IT IS ORDERED that the Meisner Defendants' renewed motion for summary judgment [Dkt. # 37] is GRANTED with respect to Plaintiff's claim for defamation.

IT IS FURTHER ORDERED that Plaintiff's WPA claim is DISMISSED as to the Meisner Defendants.

It has come to the court's attention that the Meisner Defendants have not answered Plaintiff's complaint. A separate order directing the Meisner Defendants to file an answer will follow.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 7, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 7, 2014, by electronic and/or ordinary mail.

      s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\13-12583.BRIGGS.GrantSummJ.FinalDraft.wpd